## Case No. 7,594.

### In re KAHLEY.

[3 Biss. 169:[1] 6 N. B. R. 189; 4 Chi. Leg. News, 121; 5 Am. Law T. Rep. 175.]

District Court, W. D. Wisconsin. Jan. 22, 1872.

DISCHARGE IN BANKRUPTCY — ASSENT OF CREDITORS—FIFTY PER CENT. CLAUSE.

1. Since the amendment of July 27, 1868 [15 Stat. 227], a bankrupt is entitled to his discharge, without the assent of his creditors, if his gross assets equal 50 per cent. of the debts proved, without deducting costs or expenses.
[Cited in Re Van Riper. Case No. 16,874. Criticised in Re Vinton, Id. 16,951. Cited in Re Hyndman, 5 Fed. 712; Re Waggoner, Id. 917.]

2. The intention of congress in making this amendment clearly was to make the term "assets" as comprehensive as "estate," and relieve the debtor from the costs and expenses of the proceedings.
[Cited in Re Van Riper. Case No. 16,874; Re McEwen, Id. 8,783; Re Taggert, Id. 13,725.]

3. Several cases commented on and criticised.

Application by Joseph Kahley, one of the bankrupts, for a discharge. In this case the assignee received from the estate of the bankrupts a sum exceeding fifty per centum

1 [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

of the debts proven, without deducting the costs and expenses of the proceedings, but after paying the costs and expenses it did not equal fifty per centum of the debts. The debts were all contracted since the 1st of January, 1869. The applicant, in his petition, claimed that he was entitled to his discharge without the assent of his creditors, as the amount of his assets received by the assignee exceeded fifty per centum of the claims proven. The creditors had filed no formal opposition to a discharge, and did not appear in opposition to the application.

I. C. Sloan, for petitioner.

HOPKINS, District Judge. The determination of the question involves a construction of section 33 of the bankrupt act [of 1867 (14 Stat. 533)] as amended by the act of July 27. 1868 [15 Stat. 227]. The counsel for the bankrupt contends that in all cases where the value of the assets "equals fifty per centum of the debts proven," a discharge should be granted as a matter of right. On the presentation of the question to me. I thought it quite plain that such was the meaning. but upon an examination of the authorities I found it not quite so clear as I first thought. I found that Judge Nelson, in Re Freiderick [Case No. 5.092] and Re Graham [Id. 5.661], had held that the term "assets," in the 33d section of the bankrupt act, meant "the proceeds of the debtor's property which are applicable to the payment of his debts," and that Judge Blatchford, in Re Webb [Case No. 17,314], had concurred with Judge Nelson's opinions, and said "that the proceeds of the bankrupt's property in the hands of the assignee subject to be divided among the creditors at the time of the hearing of the application for discharge, must be equal to fifty per centum of the debts proven."

These authorities being at variance with my first impression of the meaning of the section as amended, I have given the subject a more thorough consideration than I had first thought it required.

I dislike to differ from those eminent jurists, each of whom has done so much toward elucidating the bankrupt act, and in giving to it a harmonious and efficient operation. I should ordinarily do so with a good deal of distrust and hesitation, but upon the question now under consideration, I do not feel much embarrassment, for. to me, it seems exceedingly clear, although at variance with their views.

In Re Freiderick [supra] this question was not. it seems to me, fairly before the court or necessary to be decided, and the decision may therefore be considered as obiter. That was a case of voluntary bankruptcy "and the bankrupt, before any debts were proven or assignee appointed, petitioned to have his assets appraised to show that they exceeded fifty per cent. of his provable debts. The judge denied the application as no debts had

been proven or assignee appointed. The application was clearly premature, and what the judge said upon the construction of section 33, seems to me to have been unnecessary, and therefore not binding authority. And in Re Graham [supra] the court had ordered certain property subject to a lien to be sold, discharged therefrom. and that the lien be transferred to the fund in court. The surplus of the proceeds, after paying off that lien, did not reach the required amount, and the question before the court was as to whether the amount of the fund applied in discharge of the lien was to be reckoned as a part of the "assets" in determining whether they equalled fifty per cent., and the court decided that it could not be, which disposed of that case, so the portion of his opinion affirming his views in Re Freiderick, as to the meaning of section 33, was not strictly necessary. In the report of the case In re Webb [supra], the facts are not stated, but from the opinion I should infer that the question was fairly before the court. Judge Blatchford does not argue the question or present any reasons for his opinion, but simply states his conclusions.

In order to determine the question, it becomes necessary to examine the history of the legislation upon the subject. Section 33, as originally adopted, declared that "no discharge shall be granted to a debtor whose assets do not pay fifty per centum of the claims against his estate, unless," etc. That clearly meant the proceeds of the bankrupt's property applicable to the payment of the proven claims. In other words, net assets. The ordinary definition of the term "assets" was qualified and limited by other parts of the sentence as much as if the word "net" had been placed before it.

But congress by the act of July 27, 1868, amended that clause so as to make it read "no discharge shall be granted to a debtor whose assets shall not be equal to fifty per centum of the claims proven," etc. 15 Stat. 228. The judge says, in Re Freiderick, "The amendment of July, 1868, although more favorable to the bankrupt. has not changed the meaning of the word 'assets' in the section." and that as the section now stands it must be construed as if it read "the proceeds of the bankrupt's property in the hands of the assignee, and subject to be divided among his creditors must be equal," etc. To such construction I cannot yield my assent. I think before the amendment it was qualified by the context so that it meant net assets as before stated. But I think the amendment was adopted for the purpose of removing that restriction, and that it should now receive its ordinary signification, which is as comprehensive as "estate" or "effects." We must presume that congress meant to make some change in favor of the bankrupt if the amendment was made in his interest, as is admitted by the learned judge in Re Freiderick. But if they did not give him a right to a discharge based upon the gross value of his assets, then they certainly

did not improve his condition at all, for before he was entitled to a discharge upon paying fifty per centum, and if he is not entitled to a discharge now unless "he has in the hands of the assignee" fifty per centum to pay upon his debts, the only change made by it was that before the amendment he would have to see that it was actually paid over, while under the amendment he must see that it is in the hands of his assignee ready to pay over. Certainly such could not have been the meaning of congress in adopting the amendment, and such a construction effectually deprives him of any substantial benefit or advantage conferred upon him or intended to have been given him by the amendment.

The clear intention of the amendment, to my mind, was to relieve the bankrupt of the costs and expenses of the proceedings. If the estate realized a sum equal to fifty per cent., he should be discharged, whether it went to the payment of costs and expenses or to the creditors. The costs and expenses are often, as in this case, largely increased by litigation between the creditors and by suits brought by the assignee, over which the bankrupt had no control, and if the creditors are willing to waste the estate, or permit the assignee, who is their trustee, to do so in expensive litigation, they should be responsible for the consequences to that extent, that such costs should not be deducted from the proceeds of the bankrupt's estate in determining the amount his assets would pay if applied solely to the payment of his debts.

It seems to me that the ordinary meaning of the word "assets" comprises the whole of a decedent's or insolvent's estate, unless limited by some qualifying word or expression. I think, as used in the section as amended, it must receive its ordinary signification, and be held to include all the estate of the bankrupt, not that only which is applicable to the payment of debts, but that applicable to the payment of costs and expenses as well. In section 47 it is certainly so used. It is there stated "that if sufficient assets for the payment of fees," etc., showing that it may be used, and is used, in the act as meaning the "estate" applicable alike to the payment of debts and expenses. I cannot find any authority in the act, or any sufficient reason outside of it, for giving to it a more limited signification in that section than in the others where it is used. The word "estate" is used to express a like purpose in section 30, and the supreme court of the United States has construed "no assets" in the 29th section as meaning that the assignee "has not received or paid out any money on account of the estate." See form 35. The converse of the proposition would be, that if he had received or paid out money on account of the estate, he had received assets.

Again, the amount to be divided among creditors in section 28, is called "estate and effects." I therefore think the words "estate," "estate and effects," and "assets" are used synonymously in the act. The term "assets" in that section, as amended, is not, in my opinion, used to express the net balance to be distributed among the creditors, as held by the judges in the cases referred to. But, on the contrary, it means the entire estate of the bankrupt, irrespective of the use to which it may be appropriated by the court; and as the assets of the bankrupts in this case exceeded fifty per centum of the debts proven, the bankrupt is entitled to his discharge without the assent of his creditors; and in determining the question as to whether the assets do amount to such sum, the cost and expenses of the proceedings are not first to be deducted. I am aware that in the administration of the bankruptcy act, the district courts occasionally differ as to the true meaning of some of its provisions. Such differences, I think, ought, as far as possible, to be avoided, for the good of the profession as well as of the parties, and I have, on questions of practice not involving any substantial right or principle, often yielded my opinion for the sake of conformity, but I cannot allow the convenience or advantages of conformity to control me when to do so would deprive a party of a valuable right secured to him by the act. The discharge will be granted.

[For hearing on the original petition, see Case No. 7,593.]

NOTE. In a recent case in the district of Rhode Island, In re Vinton [Case No. 16,951], Knowles, J., declines to adopt the reasoning and rule as here presented, and follows the authority of Judges Nelson and Blatchford in the cases above cited. Consult, also, In re Lincoln [Id. 8,353], in which case it is held that the bankrupt should receive his discharge, he not being responsible for any loss or mismanagement of the estate, and having no control over it. The rule in the Northern district of Illinois is the same as contended for by Judge Gresham. In re Thompson [Id. 13,937]. In Re Van Riper [Id. 16,874], it was held that although the bankrupt's assets, at the time they passed into the hands of the assignee, were worth more than fifty per cent. of the claims against his estate, yet as they did not realize in gross fifty per cent., the bankrupt could not be discharged except as to debts contracted prior to January 1, 1869. Consult, also, In re Shower [Id. 12,816].