## *In re* HYNDMAN, Bankrupt.

(*District Court, W. D. Tennessee.* ———, 1880.)

1. BANKRUPTCY—DISCHARGE—PRINCIPAL DEBTOR—ACT JUNE 22, 1874, § 9.

Although the bankrupt may be liable to the creditor as principal debtor, if between him and his co-obligors he is in fact only a surety, the debt will not be reckoned against him in determining the question of his discharge.

2. SAME SUBJECT—CASE IN JUDGMENT.

The bankrupt having purchased the interest of a retiring partner, agreed, with him and the other partners, that, in part consideration of the purchase money, he would pay *one-third* of a certain partnership debt due by the old firm, but when he came to substitute a new note he signed jointly with the old partners for the whole debt, not the firm name, but their individual names. *Held*, that only *one-third* of the debt would be estimated against him as a debt on which he was a principal debtor, in determining the question of his discharge.

3. SAME SUBJECT—THIRTY PER CENTUM—HOW ASCERTAINED—VALUE OF ASSETS—DATE OF ESTIMATE—DEDUCTIONS.

The act does not mean that the creditors shall be *paid* 30 per centum of their claims to entitle the bankrupt to his discharge, but only that the assets shall be *equal in value*, at the date of adjudication, to that amount. Neither the costs of the bankruptcy proceedings, nor the costs of foreclosure suits, instituted by the assignee to collect assets, nor any expenses of the administration incurred by the assignee, will be deducted from the gross value of the assets in determining the question of discharge.

4. SAME SUBJECT—SECURED CLAIMS—INTEREST—HOW CALCULATED.

Although secured creditors may collect from the assignee interest on their claims accruing after adjudication, such interest will not be estimated in determining the relative amount of debts and value of assets, on the question of discharge, but the claims will be reckoned with interest only to the date of adjudication.

5. SAME SUBJECT—CASE IN JUDGMENT.

Where a bankrupt's gross assets would amount to 30 per centum of the debts proved against him, if interest on all claims, secured and unsecured, be stopped at the date of adjudication, and no costs of the bankruptcy proceedings or expenses of administration incurred by the assignee be deducted from the assets, *held*, that he was entitled to his discharge, although the *net* proceeds were not sufficient.

In Bankruptcy.

It appeared by the agreed statement of facts and the register's certificate that the creditors objected to the discharge

v.5, no.8—45

of the bankrupt because his assets had neither paid nor were equal to 30 per centum of the debts upon which he was liable as principal debtor. One of the debts proved against him was a note in the following words, viz.:

"$1,619.95.

"Twelve months after date we promise to pay to Mrs. M. F. Northern, guardian, etc., the sum of $1,619.95, for value received, with interest from this date; and, in case said interest be not paid at maturity, then the same to become principal and bear interest; or, in other words, interest hereon, if not paid annually, to be compounded. This fifteenth of November, 1877.

[Signed]

                     "A. HYNDMAN,
                     "D. G. WOOD,
                     "T. B. LESLIE."

This note was given under the following circumstances: The above-named Wood and Leslie and one Ligon, under the firm name of Wood, Leslie & Co., being the owners of the Covington mills, borrowed from Mrs. Northern the sum of money mentioned in it, for which they executed a note identical in form, except as to dates, with the above note, and except that it was signed only with the firm name. The bankrupt purchased Ligon's interest in the mills, and agreed to pay what was estimated as Ligon's share of the Northern note, namely, $584.78. There is some dispute in the testimony as to whether it was so understood with the creditor when they came to substitute the note of the new firm for that of the old firm, but both the register and the court found that the creditor either did not know of or did not assent to any change in the liability of the partners, and that, as to her, there being no contract for suretyship, all the obligors were principal debtors, and liable jointly and severally each for the whole amount. But as to the incoming and retiring partner, and the other members of the firm, it was understood that the incoming partner should only be liable to pay *one-third* the note, and the remaining partners would pay the other two-thirds. He paid Ligon the purchase money,—$2,-

000,—less this one-third the Northern note, and assumed his liability. There was some proof tending to show that the bankrupt himself supposed that he was only becoming liable for one-third the whole amount, as he himself swears; and, on the other hand, some proof tending to show that the nature of his contract in signing the note was explained to him, and that he knew that he was binding himself to pay the whole amount. But, in view of the findings of the register that the bankrupt and his partners did not intend to make it a firm note of the new firm, and of the opinion of the court, it is not deemed necessary to state the proof on this subject. If, on the facts of the case, the whole of this note should be counted against the bankrupt as a debt upon which he was liable as principal debtor, it was conceded he could not be discharged, and this question was certified by the register.

There were certain assets secured by mortgage which the assignee was compelled to foreclose by legal proceedings, in order to realize the amount due. He incurred costs and other expenses which he paid out of the proceeds. There were creditors who proved for principal and interest of their secured debts to filing the proof, and these the assignee paid in full, with interest up to the time of payment. If the costs of the bankruptcy proceedings and the costs of the foreclosure suits be deducted from the *gross* sum realized by the assignee, and if interest on the preferred debts due by the bankrupt, which accrued after adjudication, be estimated against him, there would not be sufficient assets to discharge him, even if only one-third of the Northern note be counted against him. But if these preferred debts are estimated with interest only to the date of adjudication, and the assets be valued without deductions for the above costs and expenses, the bankrupt would be entitled to his discharge, and these questions were certified by the register.

The following is so much of the register's certificate as presents the legal questions certified by him:

## "REGISTER'S CERTIFICATE.

"To recapitulate, the discharge of the bankrupt depends on the answers to the following questions:

"*First.* If the estate of the bankrupt equals 30 per cent. in value of the debts provided for in section 5112a, Rev. St. tit. 'Bankruptcy,' before reduced by costs and expenses of the proceedings, is that a compliance with said section?

"*Answer.* I think it will not be seriously denied that this question is settled in the affirmative by a decided weight of authority. 10 Bump, 737, and cases there cited.

"*Second.* Does the day of adjudication as the time to which interest is to be calculated apply to debts secured, as well as to those unsecured?

"*Answer.* I find much difficulty in arriving at a satisfactory conclusion on this question. Not only are the decisions conflicting, but aside from them there are good reasons both in support and in opposition. If, in advance of bankruptcy, or even suspected insolvency, a creditor secures himself, as he has an undisputed right to do, for a present passing consideration, and the debtor subsequently goes or is forced into bankruptcy, it would seem a great hardship that he should be deprived of the fruits of his prudence by refusing him interest on his debt during the time required to realize on his security. Should the security be inadequate to the payment of debt and interest to date of adjudication, it would be immaterial; but when, for unavoidable cause, there had been considerable delay in the disposition of his security, and it realized sufficient to pay principal and interest to date of settlement, the refusal to allow interest would seem to violate a vested right.

"But section 5037 provides that '*all* debts due and payable from the bankrupt at the time of commencement of proceedings in bankruptcy, and all debts then existing but not payable till a future day, *a rebate of interest being made when no interest is payable by the terms of the contract,* may be proved against the estate of the bankrupt.'

"The lines italicised indicate the commencement of pro-

ceedings as the time beyond which interest could not be calculated, and this in *all* cases.

"Again, section 5075 provides, among other things, that a mortgage creditor may ascertain by agreement with the assignee, or by a sale thereof, the value of the property. This need not involve much delay.

"The reasoning *In re Jaycox and Green*, 8 N. B. R. 244, is quite plausible. The court says: 'The general purpose and policy of the act is to produce equality among the creditors of insolvent debtors, with the exceptions provided for in the act, and, to attain that end, its provisions should, in cases of extreme doubt, be construed beneficially for the general creditors.' *In re Bloson*, 4 N. B. R. 147, the court directly decides that a secured debt, being provable, does not draw interest after adjudication. See, also, 10 Bump, 572, 573. On same page are also cited cases deciding just the opposite. But these, and all the cases I have found, involve the rights of creditors between themselves. There is another view of the question, as affecting the rights of the bankrupt alone in the matter of his discharge, and which, if I am correct, is decisive of the question now before your Honor, without passing on the one above discussed. Whatever may be said as to the date for computation of interest, as between creditors, I do not think the calculation can go beyond the date of adjudication for the purpose of an estimate of the relative value of the debts and estate. It is a parallel case with that of the security debt, which, though excluded from an estimate of the indebtedness, is not excluded from a participation in the dividend. So with the interest on *all* debts. It should, in arriving at the aggregate debt against the bankrupt's discharge, cease at adjudication; but might by *possibility*, in certain cases, be admitted, like security debts, to participate in the dividend.

"Therefore, I do not think that interest should be estimated against this bankrupt's discharge on the secured debts beyond the date of adjudication.

"*Third.* Is the bankrupt primarily liable for the whole of the Northern debt, to the extent that he cannot show that

in point of fact he is, as between him and his co-obligors, liable for only one-third?

"*Answer.* Clearly he is liable directly to the creditor for the whole debt, but if the three makers were all equally solvent, and Hyndman, under compulsion, was to pay the whole, it will not be denied that he could recover the two-thirds from the other two. When Hyndman bought the interest of Ligon he beyond doubt considered he was assuming only his liability on the note, and, indeed, it is in proof that he so stated, and had a calculation made by Mr. Cummins showing what was the amount.

"I have been unable to find a decision in point, nor, indeed, but few even bearing on the question, but the spirit of the law and the decisions are clearly in the direction of the fullest protection to the bankrupt against debts on which he is not primarily bound. I am quite positive that I have seen a decision which goes even much beyond those cited in 10 Bump. 738, but cannot find it.

"In my opinion, only one-third of the Northern debt should be estimated against the bankrupt. It does not appear but that the other parties are good for their share. On the contrary, outside the record, I learn from the best authority that the creditor expects to make the debt good from the other two.

"It is considered by the register that all the questions—one to eight—in the former portion of this certified summary are covered by the three above, as I do not consider that the question under three of the first numbers arose in the case, and I do not understand that it is insisted on.

"I further understand that, should your Honor concur in the conclusions of the register, it is conceded that the bankrupt will be entitled to his discharge; and, on the contrary, a non-concurrence as to either will defeat the application for discharge.

"Respectfully submitted,

"T. J. LATHAM,

"Register."

*W. H. Carroll*, for creditors.

*W. D. Beard*, for bankrupt.

HAMMOND, D. J. The first question in importance is whether the bankrupt was so liable as principal debtor on the Northern note that the whole of it must be counted against him; because, if this point be against him, it is conceded he cannot be discharged. I have no doubt that, in a controversy between him and the creditor, he would be held to be a principal debtor; for, as between them, no contract for suretyship is shown to have been entered into. In form it is clearly not a contract of suretyship, but the opposite; and the creditor seems to have had no knowledge of any agreement between the bankrupt and his co-obligors changing the contract. Hence, if, as between Northern and the bankrupt, the question should arise whether he was principal or surety, I should have no difficulty in holding that he would be treated as principal. But I do not think the question is to be decided wholly on the technical relation existing between the creditor and the bankrupt, but rather on the facts of the transaction as they show whether he is primarily liable to pay this note as *his own* debt. Counsel for the bankrupt has well suggested the true test: Did *he receive the consideration*, and is this a debt contracted by him which, as against all the world, he is bound to pay? If he may call upon anybody else to relieve him of his obligation he is not, in the sense of this provision of the bankrupt law, a principal debtor. If paying this debt he would have a remedy over against some one else, he is not a principal debtor. *Bates* v. *Whitson*, 2 Head, 155; *Hall* v. *Hall*, 34 Ind. 314; *Smith* v. *Shelden*, 35 Mich. 42; *Crafts* v. *Mott*, 4 N. Y. 604. Undoubtedly, a partnership note is of such character that, as between the creditor and themselves, they are all principals; but, even if the original debt to Northern was a partnership debt, the facts do not show that, when Hyndman came into the firm, it was renewed as a firm debt. In form, it is not a partnership debt, but the joint obligation of the three persons signing it. The facts show conclusively that Hyndman, as between the old members of the firm and himself, only agreed to pay *one-third* of this debt, and, per-

haps, for this very reason it assumed the form of their joint obligation. I am satisfied he was not liable, as principal debtor, for two-thirds of the note, and therefore onlyone-third will be reckoned against him in determining the question of his discharge.

The next question is whether the assets must, in fact, pay to the creditors per centum to entitle the bankrupt to his discharge, or be only equal in value to that amount, whether upon distribution the creditors realize that sum or not. I had occasion once before to examine the authorities on this subject, and felt the embarrassment of the conflict of opinion among able judges, familiar with the law from its commencement. I am of opinion that Judge Hopkins' views of this question are most in accordance with the probable intention of congress. It is all a matter of legislative intention, for congress could arbitrarily declare the circumstances under which the bankrupt may be discharged. The first act said the assets should "*pay*" the amount specified, but the amendment said only that they should "*be equal*" to the amount then fixed. I think the significance of this change of phraseology cannot be destroyed by any judicial weighing of the words used, and finding them equivalent to each other. At all events, I adhere to my former ruling, and hold with Judge Hopkins and the judges agreeing with him *In re Kahley*, 6 N. B. R. 189, notwithstanding my respect for the other learned judges who have differed with him on the point in controversy. Bump, Bankr. (10th Ed.) 737.

The next question is as to the time when this estimate of value is to be made—whether at the date of adjudication or the date of the realization of the assets by the assignee. The question is presented here under a peculiar state of facts, and the interest of the subject has been heightened by the exhaustive and thorough arguments of counsel, who agree that no case has been found adjudicating the question as it now arises. If the exact amount of the bankrupt's debts be ascertained on the day he was adjudicated, and all interest after that time be stopped, the gross value of his assets by actual result will be equal to 30 per centum of the debts; but if

interest be counted on any of the debts after adjudication, and the costs of administration, foreclosure suits, and other like expenses be deducted from the assets, he cannot be discharged. The learned counsel for the creditors argues with great force that the estate must bear the cost of administration, and that, in estimating their value, a reasonable sum must be allowed for the costs of realizing on the assets, and that, while interest must stop on unsecured claims, the secured creditors are entitled to interest till paid. He insists that it is a part of the contract for security that reasonable costs of foreclosure shall be first paid out of the proceeds, then the debt secured, and only the surplus to the debtor or his assignee. And he produces abundant authority for the proposition that secured creditors, in an insolvency court, will generally be allowed interest and costs on their debt to the day of payment. He further insists that the bankrupt is a party to the proceedings, and may, by diligence and careful supervision, hasten the settlement; and that it is his duty, if he wishes a discharge, to see to it that the assets realize in the hands of the assignee a sum sufficient for the purpose.

It seems to me that the whole argument is but another mode of saying that to entitle the bankrupt to a discharge the assets must *pay* 30 per centum, and not merely be *equal in value* to that amount, which we have already determined is not the rule we follow. But why should the bankrupt be, by such construction, made to bear the penalty of possible mismanagement of the assets or shrinkage in values, or the deteriorating influences likely to follow litigation between the creditors as to their respective rights? The law strips him of all his property, commits its care to the creditors and their assignee or representative, and he has no control over their action. They may by the best possible management realize the greatest possible results, or they may by mismanagement reduce the sum for distribution to the lowest possible amount, or entirely consume the estate in litigation or costly administration. They might do this for the very purpose of defeating a discharge. It is impossible to draw the line between reasonable expenditures and unreasonable expenditures, and no two cases would

furnish the same criterion of judgment. It does not follow that because, as between each other, the secured creditor may collect interest and costs of foreclosure, it is only the net results that the bankrupt can enjoy in this matter of determining his discharge. It is to the gross fund we must look in his behalf, and it does not concern him how or to whom it is distributed, whether it is paid out in costs or to the creditors, whether the property is well or ill managed, so long as he allows no fraudulent debts to be proved against him.

There is another suggestion in favor of this view. If the rule insisted on by the creditors here be the correct one, no bankrupt could ever be discharged until the final winding up of the estate; for, until then, it cannot be known what the costs and expenses may be, nor how much the assets will pay. Yet, on the contrary, the law allows the bankrupt, after six months, to be discharged, if no ground of opposition exists, and it may be long after that time before the estate is settled, and costs and expenses stopped. Rev. St. § 5108; Bump, Bankr. (10th Ed.) 695.

I think the true rule is to take the day of adjudication as the point of time for estimating the amount of debts and the value of assets; certainly not later than the date of assignment, when the assets pass under the control of the creditors and their assignee.

The register reaches the same conclusion, and it may be certified to him that I concur in his ruling and let the cause proceed. The bankrupt will be entitled to his discharge, if no other objection exists.