## *In re* WAGGONER, Bankrupt.

*(District Court, W. D. Tennessee. February 19, 1881.)*

1. DISCHARGE—THIRTY PER CENTUM—DEPOSIT FOR COSTS.

In determining whether the assets are equal to 30 per centum of the debts proved, it is to the *gross* proceeds the court looks, and not the *net* sum paid to creditors; and the deposit of $100 for costs must be estimated as part of the assets.

2. SAME SUBJECT—PRACTICE—DEFICIENCY OF ASSETS.

If the bankrupt desires to be discharged on the ground that his assets were of greater value than is shown by the assignee's sales, he must, in his petition for discharge, or some supplemental petition, state the facts, and tender issues to be tried in a plenary way.

3. SAME SUBJECT—VALUE OF ASSETS—WHEN DISCHARGE GRANTED.

Actual results of a fair sale are the best evidence of the value of the assets, and this will be conclusive on the question of discharge, unless there be some element of unfairness in the conduct of the sale, such as fraud, collusion, or some accident or mistake, whereby the property has brought substantially less than its real value, in which case, upon a proper showing of the facts, the discharge will be granted, notwithstanding the deficiency of funds in the hands of the assignee.

4. SAME SUBJECT—INCREASE OF ASSETS.

In this case, where the deficiency is very trifling, the court allowed the bankrupt to make it good, but declares against the practice.

In Bankruptcy.

*J. F. Huddleston,* for bankrupt.

HAMMOND, D. J. The questions arising in this case are presented by the following certificate of the register, and the proof accompanying it:

### "REGISTER'S CERTIFICATE.

"I, T. J. Latham, the register in charge of said cause, hereby certify that all the meetings in said case have been held as required under the law and rules of this court; that the specifications in opposition filed against the discharge of said bankrupt have been dismissed by order of the court; that two debts against said bankrupt have been filed, aggregating $668.01, viz., J. R. Adams $78.90, R. W. P. Pool $589.11; that the gross amount realized by the assignee was $94.45, the amount deposited was $90, making a total of $184.45.

The bankrupt insists that in estimating the amount or value of his estate he is entitled to the benefit of the $90 deposit. It is not necessary for me to pass on this question, for the reason that, even if conceded, it is still short of the amount necessary to pay 30 per cent. on the $668 of indebtedness, which requires $200.40, while he has only $184.45. But the bankrupt further insists that his personal property sold by the assignee should have sold for at least $250, and submits depositions to that effect, which are herewith filed. The register is clearly of the opinion that the proof establishes a value in excess of the assignee's report of about $150, or an aggregate of from $225 to $250. Is this proof admissible, and is the bankrupt entitled to the benefit thereof as claimed? This question first arose in this district *In re Toof, Phillips & Co.* The register reported adversely, and was reversed by his honor, Judge Trigg, since which that has been the practice in this district, and I respectfully recommend that it be adopted in the present case.

"There are no further assets on hand, as shown by the assignee's report.

"The bankrupt has passed his final examination, and fully conformed to all the orders of the court, and appears to be entitled to his discharge.

"Respectfully submitted,

"T. J. LATHAM,

"Register in Bankruptcy."

The assignee's report of the sale mentioned the property sold as one jack, one 27-year-old mule, one one-year-old mule, one mare, and sundry debts due the bankrupt; all sold for $94.45. I find in the files two depositions taken in the presence of the assignee, the bankrupt and his attorney, and one of the creditors, the witnesses being cross-examined by the assignee. These depositions were taken by the bankrupt to prove that his assets were worth largely more than they were sold for at the sale. One of these witnesses gives it as his opinion that the jack was worth $100; the older mule, $45 to $50; the younger one, $25 to $30; and the mare, $60. And he gives it as his opinion that Jopling, whose debt in a

judgment for $107 was sold to himself for $5, was good for his debts. Being asked on cross-examination if the day of sale had not been a county-court day, when the town was crowded, he replied that it was, and that there was a large crowd present, and among them the bankrupt and some of the creditors. He was then asked why the property did not sell for the prices he mentions, and he gives as the cause that it was a cash sale, and that there was a scarcity of money. He expresses the opinion that the animals were worth the sums he mentions in cash, and would have sold for that if there had been a credit sale and more money. The other witness gives the same opinion as to values, but he was not present at the sale, and had not seen the animals for more than six months.

I do not find in the record any order of the court to take these depositions, nor that there has been any compliance with the Revised Statutes, § 5003, and General Order No. 10. Indeed, there is no issue made by petition or otherwise on this question of value. When it was developed that the assets would not pay 30 per centum, the bankrupt seems to have filed with the register these depositions to prove that they were of greater value than shown by the sale. I cannot consent to this practice, as it is contrary to all correct procedure that so important a matter should be tried upon mere affidavits, as these so-called depositions must be taken to be. It seems to me that if the bankrupt desires to raise the question as to the value of his assets by showing that they were worth more than has been realized, he should present the facts on which he relies, showing that there has been a sacrifice, and the cause of it, either in his petition for discharge or in some supplemental petition. He is not bound to the particular form prescribed for his petition for discharge, and should, if they are known, therein allege all facts upon which he expects to procure it. General Order No. 32. This would present an issue, and the creditors and assignee being notified, this important question of fact could be adjudicated in some more satisfactory way than has been here adopted.

In In re Hyndman, 5 FED. REP. 705, I considered the sub-

ject of the conflict of opinion among the judges on the construction of the act of June 22, 1874, c. 390, § 9, (18 St. 180,) requiring that the assets should be equal to 30 per centum of the debts proved to entitle the bankrupt to a discharge, and concluded to follow those cases, ruling that it was to the gross value we must look and not to the sum actually paid the creditors. Upon further investigation in this case I am content with that ruling. *In re Kahley,* 6 N. B. R. 189; *In re Thompson,* 2 Biss. 481; *In re Borden,* 5 N. B. R. 128; *In re Lincoln,* 7 N. B. R. 334; *In re Wilson,* 2 Hughes, 229; *In re Friederick,* 3 N. B. R. 465; *In re Webb,* Id. 720; *In re Graham,* 5 N. B. R. 155; *In re Van Riper,* 6 N. B. R. 573; *In re Vinton,* 7 N. B. R. 138; Bump, Bankruptcy, (10th Ed.) 723, 724.

I hold, therefore, that the deposit for costs must be estimated as part of the assets. If there be any surplus after paying costs it goes to the creditors, and I can see no reason for leaving it out of the calculations. But it does not follow, because we look to the gross assets in comparing them with debts, that we are to try the question of their value by the loose opinions of the bankrupt's friends and witnesses. The opinions of witnesses as to values are at all times very unsatisfactory, even when given under the most careful examination, and not to be compared to the evidence furnished by actual results. It would be very disastrous to this section of the act of congress to establish the practice that notwithstanding the results of a fair sale the bankrupt can be discharged by showing upon affidavit, or by such depositions as we have here, that in the opinion of the affiants the property was worth more.

I do not know what facts controlled the judgment of my learned predecessor in the case mentioned by the register, but some of the cases above cited seem to countenance the practice adopted in this case, while others are clearly against it. My own judgment is that the actual results must be taken as conclusive on the question of value in all cases where there has been a fair sale, and that we cannot go upon any speculation of complaisant witnesses as to values, nor into a trial of strength as to numbers willing to swear on the one

side or the other as to such values. If there has been any element of unfairness in the sale, such as fraud or collusion, or partiality on the part of the creditors or the assignee, or any misfortune or accident, such as epidemics, floods, or the like, or unnecessary and prolonged delay, whereby the property has either depreciated in value or been sacrificed at the sale, the fault and loss should fall on the creditors and not the bankrupt. He should not be prejudiced by their mismanagement, or their machinations to defeat his discharge by lessening his assets. But in all such cases the extraordinary circumstances must appear, and the reason why the sale or collections of the assignee have fallen short of real values must be stated and proved, so that the court can see that the property has brought so much less than under a fair and auspicious sale it would have done, that the difference is substantial and controlling on the question of discharge. Mere opinions of witnesses will not do, and cannot prevail over the demonstration of a fair and unobjectionable sale. And the bankrupt must present the facts in his petition for discharge, or otherwise in some plenary method, so that issues can be tendered and tried as to the conduct of the sale and the fact of difference in values.

On the record as it stands I cannot discharge the bankrupt; but I shall not now refuse his petition, and will again refer it to the register to appoint another day, and see if his creditors will assent. Their opposition for cause has been overruled, and I do not see that they are especially objecting because of a deficiency of assets, but they have not assented, and the record does not show a compliance with the conditions of the statute. The deficiency amounts only to about $15. This bankrupt has had considerable exemptions allowed, and if he will, out of these or otherwise, increase his assets to the required amount, I shall discharge him without the assent of his creditors. But I wish it distinctly understood that this case on that point is not "to be drawn into a precedent," for I think it a vicious practice to allow the bankrupt to increase his assets for the purposes of a discharge, and very nearly akin to the process of allowing him to purchase a discharge

by paying a pecuniary consideration for the assent of creditors, which is denounced by the statute. In this case, more on the ground of *de minimis non curat lex* than anything else, I will allow it. Let the case be returned to the register for further action in the premises.